We'll turn to our last case of the morning. Rossi v. Dudek, 20-4062. We're going to start with Clifford Peterson. Mr. Peterson. Thank you, your honor. May it please the court. Cliff Peterson, Utah Solicitor General representing, or Assistant Utah Solicitor General representing Professors Dudek, Keefe, and White. I want to emphasize at the beginning that overarching all of this discussion today is that this is an academic decision, which is entitled to minimal due process, which is prior notice, and the decision must be careful and deliberate. And the Supreme Court in Horowitz has emphasized that these academic decisions are based on cumulative knowledge that takes into the very specialized areas that these professors work in, and it's not readily adaptable to the normal tools of judicial decision making. So in this case, this academic decision, which to begin with is entitled to much more minimal process than a disciplinary decision. First of all, the first legal error the district court make was to improperly parse. Sorry, your honor. In what way did you compare this type of decision to a disciplinary decision? Did you say it requires due process? In contrast to a disciplinary decision requires heightened due process, where it includes a hearing, for instance, predetermination, but an academic decision does not. It's minimal due process, and that's very well established in the Supreme Court's precedent. The district court improperly parsed out the academic appeal process from the rest of the decision. The decision, the university's ultimate decision, after four independent levels of administrative review, was careful and deliberate. There's no evidence whatsoever that it was biased at the appeals process. I would like to emphasize the committee of the academic appeals was comprised of five different people. This is the 467 through 70 in the appendix, and Professor Cannon headed that up. He was in internal medicine. There was an art professor. There was a psychiatry professor. There were two PhD students, one in her side of the story with an attorney. Sorry, your honor. I'm not so sure that it's enough that everyone was unbiased in the appeals. The question is causation, and if what happened at the first step was the result of bias, that could infect unbiased people. It's really approximate cause issue. It's sometimes addressed as a cat's paw issue, but the fact that the remaining steps in the process are conducted by unbiased people is not dispositive. The question is whether the bias at the first step infected things, so you have to show that the decision in the later steps, those decisions were independent of the original decision, don't you? Well, I don't think the burden is on us to show. In Gaspar, this court said that absent positive evidence of ill will or bad motive by decision makers, then the court is not going to intervene and second guess these academic decisions, so what we have here is... But you're saying there's no ill will. It's enough if there's no ill will in steps two through four or two through five, even if there was a step one, which generated the whole thing. If, for example, these were, and I'm not saying that the record supports this, if these were rubber stamp procedures where, oh, well, Professor Dudick, he's a very respected, accomplished researcher, and if he says this, I'm not going to challenge him. If that's what these unbiased people said, not knowing that Dudick himself was biased, then the plaintiff would still have a claim. Well, I think it's improper and legal error to presume that this is a rubber stamp, that this is a kangaroo court in all four levels of independent decision making. I think Gaspar is to show positive evidence of a bias. You have to show that the process was not fair. What you have to do is show bias at the first step, and then, I'm not sure about the burden of persuasion on this point, but then the issue is, did that bias carry through and infect the unbiased people? You're overstating it by suggesting that just because there's no appellate proceedings, we'll call them, that that saves you. It's good. It helps you a lot, but they have to be independent. Well, and they were. There's no evidence that it wasn't independent. If you look at footnote seven on the Gossett decision, this court's Gossett decision in footnote seven, it makes a distinction between that case and this case. In that case, they had alleged that the appeals process and the grievance and the later decisions were also affected by the gender discrimination in that case. That was a degree of magnitude difference. That was a constitutional level. That was gender discrimination, but in this case, there's never been any evidence that the appeals process was anything other than a robust and fair process, and she got way more process than she was entitled to under the minimal due process. It shows that they didn't rely at all on Dudek's opinions? Well, Dudek didn't even hear from Dudek. The academic appeals committee heard from Keefe after hearing from Rossi with her attorney. They got to go into everything that the district court found was in dispute. That's significant here. They went into the conflict of interest with her attorney. She went into the supposed poisoning of other committee members. She went into everything that in substance, the core of her challenge in the district court. She went into all of that. It's a jury of her peers, as it were. It was two graduate students from the main campus, three other professors from the university at large. I mean, to presume that Dudek's influence reaches throughout the whole university is a preposterous inference. What you're saying is at least at one of these appellate stages, the bias claims that are being raised here were specifically addressed and the committee decided to uphold the decision despite that. They thought that the decision was the correct decision and they were fully informed and it was fully vetted that Dudek might be biased. Yes, that's exactly right. And significantly on appeal, Rossi does not now challenge that she was unable to go into anything that she wanted to. Her attorney was restricted in what he could raise or that she was hamstrung in any way. She's not made that argument on appeal. She has not faulted the academic appeals process. I guess I don't understand how the academic appeal process somehow insulates them from liability if their own conduct was that they met the constitutional violation requirements there. Why would they possibly be insulated based on an arbitrary and capricious review internal standard? I don't get it. What authority could you also, could you point me to some authority that says somehow even if their own conduct was sufficient, somehow we would from our perspective, show me a case from the Supreme Court or this court where someone is able to challenge it to disregard an entire four levels of appeals process with no evidence that that was biased or tainted. How about Gossett? How about Gossett? Gossett is distinct. As I mentioned a minute ago in footnote seven, it says there that he alleged and the district court did not address the supposed... Right, because he was addressing the fact that he was apparently made a gender discrimination allegation regarding the appellate process as well, the administrative process, and they said we're not going to reach that right now. You can talk about it, but we have found that the individual in that case, there is a constitutional violation there. They didn't care what happened in the fact, they didn't care that this had been affirmed on appeal. That wasn't even relevant. But in this case, they said they could separately address that, but it wasn't relevant. Do you see what I'm saying? I disagree that it was not relevant. The difference is in this case, there has been no allegation and no evidence to back up that the, that there was any ill will or bias by those independent decision makers. That's the key here. And there's no... We didn't care. We said it didn't matter to our determination and gossip that there was an independent appeal process or that that independent appeal process affirmed, or that there may have been discrimination in that independent appeal process. Well, we allowed it to proceed. We allowed it to proceed. And I think we affirmed this, the denial of summary judgment. In that case, we allowed it to proceed based solely on the violation of the decision maker. But this court specifically said in footnote seven, that that issue on the appeal, on what happened after that was, that was fully, that was fair game on the appeal. This court didn't express an opinion on the appeal, on the, on any sort of academic appeal. We didn't need to. We had the violation of the decision maker is my point. Go ahead, go on. Right. Okay. And I understand where the court's coming from, but specifically when, when, when the process is, you also have to balance with this academic appeal. You also have to balance what the court, what happened in Regents versus Ewing. And that was an extensive process. It happened post termination. The second part here is it was not clearly established that these professors had to follow this judicial tribunal standard that they had to follow the may have tainted standard. The district court made way too many steps in advancing the articulation of what the due process standard is. And particularly when the Supreme court has said the nature of due process doesn't lend itself to these inflexible universal standards that you will apply for all situations. The holding in this case, regardless of what you say should be tied closely to these facts. We would urge the court to rule in this case that when you're given extensive process like this, you're a chance to tell your side of the story, especially with an attorney, you're allowed to go into everything that you do process for an academic decision. True. It would be a different story. If this was a disciplinary decision, all their cases are disciplinary. Show me an academic decision where the court was able to parse out part of the process and ignore the rest of it without evidence. Part of the problem, for instance, you can have a situation where a professor, if you allow a distinct constitutional violation to occur, or if you allow the analysis to be that limited, you could even have had an administrative appeal that reversed it. And yet the person could still bring a claim to say my due process rights were violated in this discrete part. You start parsing out this and this, even though I even got, I won my administrative appeal and I got readmitted. There was still a discrete violation of my due process rights at that level. I think there's a reason there are no cases where a court has ever parsed out part of the process in the absence of hard evidence on that. And so part of the reason that, a big part of the reason they dismissed her, I believe from the program is because of her, essentially what they thought was dishonesty and with regard to her, the work that she had done in studying the data and data fabrication. Wasn't that part of it? Well, make no mistake about it. The district court concluded that this was an academic dismissal. It was academic. The district court dropped a footnote, and that's what I'm asking about, about the fact that any allegations of disciplinary violations, or I don't know if you'd call it disciplinary, but professional and ethical violations have to be treated differently. They've got to have a hearing. The student has to have a hearing. No, because this was an academic decision. I'm saying, I'm asking you about specifically about, I'm not asking what the district court termed it. I'm asking about that aspect of their decision. Wasn't that really based on an ethical violation or misconduct? No, if you look at the university policy on that, the academic is defined very broadly, and it can include some aspects that we might say have some overlap with the others. But this was clearly an academic decision judged by academic standards. Why wasn't that an allegation of misconduct? They said she fabricated evidence. She misstated evidence. She fabricated evidence. That wasn't an ethical violation. That wasn't a disciplinary matter. It's also an academic violation. When you did stroke to defend your dissertation. I'm not asking if it's also one. I'm asking if that's an ethical matter. That's an ethical allegation, and I don't see how you can get around that it is. Well, there is some overlap, but this is, we're on an interlocutory appeal. The universe of facts is the district court found this was an academic decision. So we are stuck with that in the same way that we are hamstrung with Rossi's version of what happened in the front of the dissertation committee. We're on interlocutory appeal, and so we don't second guess the district court's facts. I thought the district court found that that particular rationale, which was a big part of her termination, was a non-academic matter because it involved ethical standards and pursuant to the university's own guidelines. She deserved an opportunity to be heard on that. I thought the district court made that. He concluded unequivocally this was an academic decision. I know that part of it. I'm okay. Okay. Mr. Hansi. May it please the court. My name is Ryan Hansi. I represent the appellee Christina Rossi. Christina spent years pursuing a terminal degree in neuroscience at the University of Utah. She was dismissed from that program after being the longstanding target of hostility by her dissertation mentor, Dr. Dudek, which included unproven allegations of research misconduct and dishonesty and the like, which Dr. Dudek communicated to her other dissertation committee members frequently. That dismissal obviously has severely damaged Christina, who has been literally unable to pursue a career in her chosen field. Now, the district court here conducted an exhaustive review of the factual record. It first concluded, as has been discussed, that the committee's dismissal was overall academic rather than disciplinary. It then found that the decision was not careful and deliberate as is required under prevailing law. Despite what the appellants say in their briefs, the court did not find that the appellants violated Christina's due process rights. That would of course be the province of the jury, but the court did find evidence of ill will, bad motive, and concealed non-academic reasons, including bias, and it found that that evidence and the inferences therefrom, viewed in the light most favorable to Christina, could allow a reasonable fact finder to conclude that the appellants violated Christina's procedural and substantive due process rights. And when it went through its review of the facts in its ruling, the court kind of identified two categories of evidence that the decision was not careful or deliberate. It first looked at what I'll term broad evidence that relates to or implicates the overall circumstances and the committee as a whole, and then it went even further and looked at evidence specific to each of the appellants. Concerning the broad evidence, the court noted that Christina had excelled in the program for five years. She had excelled according to the committee's own notes. She got fantastic grades. She had published papers. She had secured a postdoctoral position at the prestigious MIT. As late as March 30th, 2013, just days before her defense, Dr. Dudek said that one of her papers would fly fine, and to continue as she was going on the other one. That was the methods paper? That was the methods paper, yes. The committee maintained that Christina only analyzed one day of data, but the record shows that she analyzed many days of data, and that data was in fact saved on her computer, which was taken away from her and in the possession of the committee. Christina offered to show her data and analyses to the committee, and they declined. Although the committee itself could never agree or reach consensus on how Christina's analyses or methodology should occur, they expected her to meet their requirements for a detailed methods section. When Christina proposed one methods section that apparently satisfied industry standards, the committee responded that she had made no progress. Just a second. You're getting to the merits of the decision, and that's not the issue here, is it? The issue, you could show that it would have been much better for them to keep her in the program, that she was really very good. For you to prevail, you've got to show there was a constitutional violation in the denial, and the fact that they make a mistake in assessing her skills or contributions is not a constitutional issue. Do you agree with that so far? I agree that she needs to show concealed non-academic reasons, or ill will, or bad motive, or the like, or an arbitrary decision. So how far can we go? What if several people in the committee just didn't like people from the South, or didn't like fat people, or didn't like her because she smoked? Would that be a constitutional violation? I don't know, and that isn't the fact pattern before us. I mean, here we're blessed with a robust factual record that highlights what was going on behind the scenes. So tell me specifically what the bias was that was unconstitutional here. Well, Judge Waddups laid it out pretty particularly, and I just went through most of the- Just tell me, just tell me. Well, okay, I'll continue then where I left off, because I think I was doing- You've been talking about how their decision was bad. I want to know what the improper bias was. The one thing I can recall is that Professor Dudek didn't like her research because it hurt him financially. Yes, yes, one piece of this- What else is it? Yeah, one piece is the conflict of evidence. I'm not sure what you mean by conflict of evidence, but- No, conflict of interest. Yeah, where he stood to gain financially with the success of the Epic device. So what if the conflict of interest was that he's seeking research grants from the NIH, and he's pursuing certain lines of inquiry, and that's very important to his grant funding, and she's not. She's going in another direction, and that's not going to help him. So he doesn't want her in the program anymore. He's not helping him. He's taking resources away from his favorite line of research, and there's a financial interest of his in that. Does that disqualify him from denying her the PhD, from judging her thesis? Well, I think that it would depend on what facts are in that record. I mean, that's just a- Well, I gave you the facts. I gave you the facts. Well, no, that wouldn't be a complete record, and the bottom line is that you would look at whether or not- Don't tell me that my facts are inadequate. Look, one of the issues here is qualified immunity. It is. And I want to know what's been resolved, and I must say, my initial reaction to your argument was, yeah, they can't do that, and then I started thinking of other situations, and I'm not so sure about that, and it needs to be clearly established. So these people might have been biased against her, and we may all be very upset that she was denied her PhD, that her thesis was rejected, but that's not the Constitution. No, no, you're right. Clue established law. So I'm trying to get a feel for when you say biased and arbitrary. We do have cases that if it's predicated on her gender, that's unconstitutional. Sure. I'm not sure we have any cases that go beyond gender, and I'm quite happy to say if they decided against her because of her gender, that's unconstitutional. That's unfair. I mean, that would be- Yeah, right, that would be- There are all sorts of financial interests and personal interests that a faculty member may have, and I'd like to understand what is disqualifying. Here's how I'll answer. The district court needs to determine whether or not the factual record at issue could allow a reasonable fact finder to conclude that the real reasons for the academic decision were not in fact academic, that they were concealed non-academic reasons, or ill will, or bias, or no rational basis, or arbitrary. That's the language. So your answer to the question I asked before, if the committee members don't like smokers, that would be a constitutional violation. No, no. Why not? Evidence that the dismissal decision was actually because they didn't like her smoking habit as opposed to academic reasons, she would have stated a claim. That would be a constitutional violation. Yes, it would. That is not an academic reason. Does it matter that it was concealed? Does it have to be concealed? And I suppose most of the time it would be concealed, because if you're which could happen, you would probably state that. But generally, you're saying the non-academic reasons are concealed. And so she doesn't have the point being, regardless of what the reason is, if it's a reason and it's concealed, she doesn't have the opportunity to respond to it. Well, I think that's one of the reasons, but I think it goes beyond that. And you're right, I don't think it has to be concealed. The point the court made in viewing it was that was the decision. Council, please let me, I want to pursue this. If you can't deny rejected dissertation because the author was a smoker, that's a constitutional violation. Then I assume you can't fire somebody for being a smoker. That would be a constitutional violation. So now all government employees in this country are protected against being fired for smoking. Is that the conclusion we should draw here? I wouldn't go that far. And I mean, that's not the fact pattern here. I mean, the fact pattern here is. Your fact pattern, what you said is, is if there's bias that infects the decision. Yes, constitutional violation. And it seems to me there are lots of different biases. Well, but your honor, bias is only one of the things that I've said that is the decision careful and deliberate. How can we say that an academic decision ostensibly based on the student's academic merit that is actually really because they don't like her smoking habit is careful and deliberate. And the answer is you can't, it's not, it wouldn't be. And so that's what the courts have cautioned about. And that's when judicial deference to academic decisions has to go by the wayside because, because yeah, they defer to academicians on academic matters. That's their expertise. But if there's evidence, real evidence that it wasn't in fact academic, that was something else. It was personal. It was because of ill will. It wasn't because of their math skills. Let's say that warrants a closer look by the courts. And that gives rise to a fact pattern that could allow a jury to say, this was not this, the reasons were not what the committee said that they were. And that's what judge Wattups found here. And so, you know, I'd be interested to know what this test about legitimate, true academic decision-making relates to. Is it more of an affirmative defense or a line that protects what might otherwise be challenged as a violation of free speech rights? For example, if someone wrote a thesis that was, quote, politically incorrect. And though the defendants defended on the basis that, look, we examined this based on academic merit. Everything in here is misspelled. All the citations are wrong. So you don't have a first amendment claim here. But here, all you've got is procedural due process. And if procedural due process requires, as a matter of constitution, that there be no external influences on the people making the decision, then we've, we've exploded the law. I mean, it's incredible. Your Honor, and I will point out that judge Wattups didn't just hang his hat on this, what we're calling bias. I mean, he came right out and said, the evidence shows that Dr. Dudek had ill will against Christina, that Dr. Keith had ill will against Christina, that Dr. White concealed non-academic reasons for his decision, and that, that there was evidence that the committee as a whole did that. And so he wasn't just focusing on the bias element. This was... It sounds like, it sounds, all that ill will sounds like bias. Well, I think, I think that... And you're going to have to explain to me how someone, how your client could win on that ground. But someone who is fired from employment on same grounds doesn't have a constitutional claim. And if someone fired on those grounds does have a constitutional claim, then we've expanded... And the constitution is going to govern every employment decision by a government in this country. At least I don't see a line you're drawing here. Well, I was offended by what happened too. That doesn't make it a constitutional. May I respond? Yes. Don't worry about your time right now. Take, I talked a lot about this and I want to hear  you. I think that the Gossett case gives us what we need. It, it stated that somebody like Christina has a constitutional claim if the academic decision is not careful and deliberate. We have the Gasper case that talks about ill will and bad motive and concealed reasons implicating due process in the academic decision setting. And we have Gossett talking about how an arbitrary decision or one based again on non-academic reasons can violate substantive due process. And, you know, and though, and Gossett is looking at cases like Harris and Ewing for propositions. And so, I mean, the, the evidence here is robust that there was ill will against Christina. They believed for the entirety of her tenure there after her, after her failed defense that she had lied about the extent of her data and analyses when that wasn't even true. And furthermore, you had Dr. Dudek telling the other committee members, by the way, even after Dr. Botkin had told him, I don't find evidence of academic misconduct, put this to bed. Don't talk about this to anyone. Even after that and before you had Dr. Dudek infecting the other committee members over and over again, calling out her dishonesty, the dishonesty in her work, her falsified data, her unanalyzed data, and they had the ability to go check for themselves. That's just one piece. You had John White telling the committee point blank right before they issued the dismissal letter that one of the reasons that he was voting to dismiss her was his perceived understanding of the circumstances surrounding Christina's departure from Boston University eight years earlier, that he himself had no personal knowledge of it. He was speculating about that as Judge Waddup's found is a non-academic reason. If anything else, she should have been given a hearing on that because that was a disciplinary reason. Counselor, can I have you address one more thing along that lines? What you just told us about the two professors is about White and Dudek is very specific about their individual actions and concealing, both of them concealing non-academic reasons and the district court findings about those. The district court also made extensive findings about Keefe individually, but I don't see that any of those come close to that kind of active concealment in the sense that where she actually told the committee my decision is based on this non-academic reason or it's clear that it was. Does she only come in through the district court's taint analysis? I think so. The court did say this. The court said that there was evidence that supported the fact that Dr. Keefe was judging Christina's performance based on Dudek's reactions and comments rather than on the merits of her actual performance. Then he went further and he personal opinions that she developed created such ill will against Christina that there is an issue whether or not her dismissal vote was actually based on academics. Then after saying that, he goes through and he talks about how sometimes she would actually look or view Christina's work through an academic lens, but then after hearing Dudek disparage her, she would flip 180 degrees and tell Christina that her work was failing. I think that's what the judge below is looking at and focusing on is that there's evidence Dr. Keefe wasn't formulating her own decisions based on academic reasons, that she was getting swayed by these concealed non-academic reasons and Dudek's personal animosity towards her and she was convinced. Okay, that's enough. I understand your response, I think. Thank you. I think we understand your position. I feel bad that I didn't get to talk about the post-dismissal process, but we covered it in our brief, I think. Yeah, I think Mr. Pedersen has a couple minutes. No, six seconds. Okay, just two minutes. You've got a minute. Thank you, Your Honor. First of all, it was not clearly established that this may have tainted standard would govern. Every reasonable professor would not have been on notice that this may have tainted standard governs all their actions. Second of all, page 72 of the district court's memorandum decision is where he made manifest legal error here by saying, by throwing out the entire appeals process because of what they said one line about the mentorship. She had her day in court. She got to tell her side of the story. You can't just throw out the entire appeals process and presume that those decision makers are poisoned in the absence of evidence as required by Gaspar, this court's decision and we will submit it. Thank you, Your Honors. Thank you both, counsel. Thank you, Your Honors. Case is submitted. Counselor excused.